UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

TAMERA K. LEWIS,  Case No. 07-52942
  Chapter 13
  Hon. Walter Shapero
                Debtor.
_____/

TAMERA K. LEWIS,

                Plaintiff,  Adv. Pro. No. 07-6381

v.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. and SPECIALIZED LOAN SERVICING, INC.,
jointly and severally

                Defendants.
_____/

## OPINION GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING

I. Introduction

The matter before this Court is Mortgage Electronic Registration Systems, Inc. ("MERS") and Specialized Loan Servicing, Inc.'s (collectively "Defendants") motion under Fed. R. Civ. P. 12(b)(1) to dismiss Debtor Tamera K. Lewis's complaint to avoid a mortgage pursuant to 11 U.S.C. § 544. Defendants assert that the Debtor lacks standing to avoid a lien under § 544. For the reasons that follow, the Court grants the Defendants' motion to dismiss.

-1-

## II. Facts

The underlying facts are not in dispute. MERS is the second mortgagee of an April 20, 2006 mortgage in the amount of $19,000 that secures property owned by the Debtor, located at 18306 Norborne, Redford, MI 48240. Specialized Loan Servicing, Inc. services the loan. On July 3, 2007 the Debtor filed for relief under Chapter 13 of the Bankruptcy Code. Schedule D of the Debtor's bankruptcy petition indicated that Specialized Loan Servicing held a secured claim on the property. The original Chapter 13 plan listed Specialized Loan Servicing as a Class Two Continuing Claim. According to the attached liquidation analysis, unsecured creditors would receive zero distribution in Chapter 7, and $6.38 or 0% distribution under the plan.

On September 5, 2007 Debtor filed a first amended plan which listed Specialized Loan Servicing under class 5b, entitled "other secured claims," and indicated that "[t]he mortgage debt of this creditor is unperfected and shall be treated as an unsecured debt in its entirety and will lose its lien upon confirmation." Section II subpart B of "General Provisions" proposed to grant the Debtor standing to assert various powers of the trustee, including strong-arm powers under 11 U.S.C. § 544.

> <u>VESTING, POSSESSION OF ESTATE PROPERTY AND LIEN RETENTION:</u> Upon confirmation of the Plan, all property of the estate shall **not** vest in the debtor [11 U.S.C. § 1327(b)] **but shall remain property of the estate**. The debtor shall remain in possession of all property of the estate during the pendency of this case unless specifically provided herein [11 U.S.C. § 1306(b)]. All secured creditors shall retain the liens securing their claims **subject to the avoidance powers of the Debtor granted herein and provided the Debtor retains possession of the collateral** and otherwise stated. **Debtor shall have standing to commence turnover actions under 11 U.S.C. § 542, to assert strong-arm powers under 11 U.S.C. § 544, to avoid statutory liens under 11 U.S.C. § 545, to recover preferences under 11 U.S.C. § 547 and/or to avoid fraudulent conveyances under 11 U.S.C. § 548, and/or to sell the estate's interest and interest of any co-owner pursuant to 11 U.S.C.**

**§ 363(h) and in furtherance thereof commence adversary proceedings.**

The required liquidation analysis showed that unsecured creditors would receive nothing in a Chapter 7 case but would receive a 59% distribution under the terms of the amended plan. Shortly after the amended plan was filed, the Debtor filed an objection to the claim of Specialized Loan Servicing alleging that it failed to perfect its security interest.

On September 21, 2007 the Debtor filed an adversary complaint against Defendants alleging that the mortgage was not properly recorded with the Wayne County Register of Deeds and was subject to the avoidance powers of the trustee as a bona fide purchaser under 11 U.S.C. § 544(a)(3). Debtor contends that she has standing to prosecute avoidance actions under § 544 if the trustee has failed to pursue the action. Defendants filed a motion to dismiss the adversary proceeding under Fed. R. Civ. P. 12(b)(1) for lack of standing. Shortly thereafter, the Debtor filed a motion to compel joinder of the Chapter 13 trustee. Following a hearing, the Court granted the motion to compel joinder. This opinion addresses whether the Debtor has standing to avoid liens pursuant to § 544.

III. Discussion

The Chapter 13 debtor is authorized under various provisions of the Code to exercise the rights and powers of the trustee, independent of the trustee. Section 1303 provides that the debtor has, "exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l) . . . ." Section 1304 states that a debtor engaged in business has, independent of the trustee, the rights and powers of the trustee under §§ 363(c) and 364. Finally, § 522(h) permits the debtor to avoid transfers of property to the extent such property was exempt under § 522(g)(1). No section of the Bankruptcy Code specifically authorizes a debtor to exercise

-3-

07-06381-wsd    Doc 19    Filed 04/09/08    Entered 04/09/08 12:00:12    Page 3 of 11

the strong arm powers of the trustee under § 544.

Section 544 provides that as of the date of the commencement of the case the power to avoid liens and transfers lies with the trustee.

> The trustee shall have, as of the commencement of the case . . . the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by -
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). The Debtor contends that § 544 contemplates that a Chapter 13 *debtor* has standing to exercise the avoidance powers concurrent with the trustee for the benefit of creditors. Pursuant to 11 U.S.C. § 103(a), Chapter 5 of the Bankruptcy Code applies to cases brought under Chapter 13.

There is a substantial split in authority over whether Chapter 13 debtors may prosecute trustee avoidance actions for the benefit of the estate. Debtor cites *Houston v. Eiler* (*In re Cohen*), 305 B.R. 886, 893 (9th Cir. BAP 2004) in support of her position. In *In re Cohen*, the debtors sought standing to contest the secured status of a creditor in the proceeds of a personal injury lawsuit. The Chapter 13 plan included a provision in which the debtors had the right to sue to avoid the lien. In addition, the trustee executed an assignment of the trustee's avoidance claims to the debtors. The court found that a plan term was not in itself sufficient to confer standing if standing did not otherwise exist. *Id.* at 891. After observing that Chapter 13 was silent in regard to whom, trustee or debtor, may exercise trustee avoiding powers, the court analyzed the statutory scheme of Chapter 13 and deduced that its provisions contemplated debtor standing to prosecute avoidance actions. *Id.* at 895-97. Several

-4-

sections of the Code guided the court to that conclusion, namely: (1) under § 1306(b), Chapter 13 debtors remain in possession of all property of the estate during the case; (2) §§ 1302(b)(1) and 1304(c) omit § 704(a)(1), the duty that obliges Chapter 7 trustees to pursue avoiding actions, from the duties assumed by a Chapter 13 trustee. Thus, the Chapter 13 trustee is not required to collect and reduce to money the property of the estate; (3) under § 1303, Chapter 13 debtors have the authority to use, sell or lease property of the estate under §§ 363(b), 363(d), 363(e), 363(f) or 363(l); (4) under § 541(a)(3), property of the estate includes interests in property recovered by the trustee pursuant to the avoidance powers; (5) under §§ 1321 and 1323(a), only the debtor can propose or modify a plan before confirmation; and (6) under § 1325(a)(4), recoveries resulting from the avoidance powers must be included in the Chapter 13 plan. *Id.* at 895-97. After reviewing the Code provisions, the court concluded that "[i]t would be an odd system that would require a chapter 13 debtor to depend upon the recovery of an avoidable transfer in order to have a confirmable plan but not permit the debtor to avoid the transfer." *Id.* at 897.

Notably, the *Cohen* court determined that § 1303 merely listed those powers that debtors held *exclusive* of the trustee, but was silent with respect to other powers. *Id.*.

> In view of the structure of the rest of the chapter 13 system in which the debtor retains possession of all property of the estate, including the proceeds of avoiding actions, and is unable to use such property without court permission, we think that the construction of § 1303 most consistent with the whole of the Bankruptcy Code is that, by listing powers the debtor holds exclusive of the trustee, it leaves the debtor with other powers that may be exercised concurrent with the trustee.

*Id.* Regarding § 1303 as ambiguous, the court turned to the legislative history for guidance and found that it too provided justification for the conclusion that debtors have standing to assert trustee

avoidance powers.

> At the time of enactment, the floor managers in the House of Representatives and the Senate explained that the designation in § 1303 of rights and powers that chapter 13 debtors have exclusive of the trustee "does not imply that the debtor does not also possess other powers concurrently with the trustee" and that "[f]or example although [§ 323] is not specified in section 1303, certainly it is intended that the debtor has the power to sue and be sued." 124 Cong. Rec. H11106; *id.* S. 17423.
>
> Since the trustee does not personally assume the private rights of the debtor, the power to "sue and be sued" could only refer to the estate. Thus, the floor statements confirm that the drafters of the Bankruptcy Code contemplated that chapter 13 debtors would be able to exercise trustee powers concurrent with the trustee with respect to powers that were not exclusively allocated to debtors.

*Id.* at 899. The court rejected a narrow statutory interpretation, finding instead that Chapter 13 is to be construed broadly, and concluded that Chapter 13 debtors had concurrent power with the trustee to exercise avoidance powers under § 544 for the benefit of the estate. *Id.* at 900. *See also, Thacker v. United Companies Lending Corp.*, 256 B.R. 724 (W.D. Ky. 2000) (Chapter 13 debtors had standing to exercise strong-arm powers); *Freeman v. Eli Lilly Fed. Credit Union* (*In re Freeman*), 72 B.R. 850 (Bankr. E.D. Va. 1987) (where the trustee does not act, the debtor may exercise the trustee's strong-arm powers under § 544(a)).

*In re Cohen's* conclusion represents the minority view on the issue. The majority of cases subscribe to the view that a Chapter 13 debtor lacks standing to assert the trustee's avoidance powers except to the extent explicitly permitted by the Bankruptcy Code. *See Realty Portfolio, Inc. v. Hamilton* (*In re Hamilton*), 125 F.3d 292 (5th Cir. 1997); *In re Binghi*, 299 B.R. 300 (Bankr. S.D. N.Y. 2003) (listing cases); *In re Redditt*, 146 B.R. 693 (Bankr. S.D. Miss. 1992) (Chapter 13 debtor lacks standing to assert trustee's strong-arm powers). Those courts addressing this issue in the

-6-

context of § 544 base their decision in part on the fact that the clear and unambiguous language of § 544 confers avoiding powers exclusively upon the trustee. Further, the equally clear and unambiguous language of § 1303 shows that Congress did not intend for debtors to exercise trustee avoiding powers. *Hansen v. Green Tree Servicing, LLC* (*In re Hansen*), 332 B.R. 8, 12 (10th Cir. BAP 2005) ("Section 1303, which defines the rights and powers of a Chapter 13 debtor, lists very specific provisions where debtors have exclusive rights. Avoiding powers are not among them.").

Many courts following the majority view are persuaded by the Supreme Court's analysis in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). In *Hartford Underwriters*, an administrative claimant initiated an adversary proceeding against a secured creditor seeking payment pursuant to 11 U.S.C. § 506(c). Section 506(c) provides that "[t]he trustee may recover" certain costs and expenses from a secured creditor's collateral. The Supreme Court rejected the argument that an administrative claimant had an independent right under the statute to seek payment of its claim from secured property. The Court applied the plain meaning rule and found that the statute was clear in specifying who may use § 506(c). Concluding that an administrative claimant was not a proper party to seek recovery under the statute, the Court wrote:

> Several contextual features here support the conclusion that exclusivity is intended. First, a situation in which a statute authorizes specific action and designates a particular party empowered to take it is surely among the least appropriate in which to presume nonexclusivity. "Where a statute . . . names the parties granted [the] right to invoke its provisions, . . . such parties only may act." Second, the fact that the sole party named - the trustee- has a unique role in bankruptcy proceedings makes it entirely plausible that Congress would provide a power to him and not to others. . . .
>
> Similarly, had Congress intended the provision to be broadly available,

-7-

07-06381-wsd    Doc 19    Filed 04/09/08    Entered 04/09/08 12:00:12    Page 7 of 11

>it could simply have said so, as it did in describing the parties who
>could act under other sections of the Code.

*Id.* at 6-7. (internal citations omitted). Weighing in favor of the Court's conclusion was the fact that the petitioner's reading of the statute would lead to unfavorable results by allowing multiple administrative claimants to seek recovery under the section, an event that would undermine the court's ability to coordinate proceedings and the trustee's ability to manage the estate. *Id.* at 12-13.

The Court in *Hartford Underwriters* specifically addressed whether the claimant had an independent right to act under the statute, but left unresolved whether a bankruptcy court could allow interested parties to act in the trustee's stead in pursuing recovery under the statute. *Id.* at 13 n.5 ("Petitioner asserted an independent right to use § 506(c), which is what we reject today."). The Court recognized the practice of some courts in allowing a party "derivative" standing to bring avoidance actions when the trustee refused to do so, yet declined to address that specific question. Whether the doctrine of derivative standing applies under § 544 to afford interested parties standing to assert powers held by the trustee remains a viable question. 4 Collier on Bankruptcy ¶ 506.05[10], at 506-14 (15th ed. rev. 2005).

Under certain circumstances use of the doctrine of derivative standing has been approved by the Sixth Circuit. In *Can. Pacific Forest Prod. Ltd. v. J.D. Irving, Ltd.* (*In re Gibson Group, Inc.*), 66 F.3d 1436 (6th Cir. 1995), the Sixth Circuit recognized a creditor's derivative right to file an avoidance action pursuant to 11 U.S.C. §§ 547 and 548 in a Chapter 11 proceeding when the debtor fails to pursue the action. Sections 547 and 548 provide that "the trustee may avoid" certain preferential or fraudulent transfers. The court concluded that "the express statutory language does not prohibit creditor standing, and that such standing furthers Congress's purpose in balancing the

-8-

07-06381-wsd    Doc 19    Filed 04/09/08    Entered 04/09/08 12:00:12    Page 8 of 11

interests between the debtor and its creditors in a Chapter 11 reorganization." *Id.* at 1440. In situations where the debtor-in-possession abuses its discretion by failing to bring an appropriate action, the court concluded that Congress did not intend "to exclude creditors from seeking to avoid preferential or fraudulent transfers." *Id.* at 1441. A creditor has a right to proceed on behalf of the estate with permission of the court if: (1) a demand has been made upon the statutorily authorized party to take action; (2) the demand is declined; (3) a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court; and (4) the inaction is an abuse of discretion ("unjustified") in light of the debtor-in-possession's duties in a Chapter 11 case. *Id.* at 1446. In *Jefferson County Bd. Of County Comm'r v. Voinovich* (*In re The V Companies*), 292 B.R. 290 (6th Cir. BAP 2003), the Sixth Circuit BAP reviewed the decision in *In re Gibson* and concluded that it was not inconsistent with the Supreme Court's decision in *Hartford Underwriters*. The court concluded that the decision in *Hartford Underwriters* did not extend to the context of derivative standing, that the "precise textual interpretation of one section cannot and should not be blindly applied to another" and that nontrustees could be granted derivative standing to avoid certain transfers. *Id.* at 298.

Although utilized most frequently in Chapter 11 proceedings, some argue that the doctrine of derivative standing applies in Chapter 7 proceedings as well. *See Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc.*, (*In re Trailer Source, Inc.*), 2007 WL 1240451, at *1 (Bankr. M.D. Tenn. April 27, 2007) ("[T]here exists substantial ground for difference of opinion as to the validity of derivative standing in Chapter 7 actions."). This Court was unable, however, to find any case that extended the doctrine of derivative standing to a nontrustee in a Chapter 13 proceeding. Further, we are disinclined to do so here because to do so would be futile.

-9-

The doctrine of derivative standing is a judicial construct which allows courts to permit a party to pursue valuable actions despite lacking the authority to do so when the nominal plaintiff unreasonably refuses to act. *Official Committee of Unsecured Creditors of Cybergencis Corp. v. Chinery*, 330 F.3d 548, 568 (3rd Cir. 2003); *In re Gibson Group,* 66 F.3d at 1442. Although the trustee in the instant matter failed to *initiate* said action, she did not refuse to pursue the claim. The trustee has been joined as a party plaintiff to the action and represents to the Court that she is willing and able to pursue the action. Since the trustee did not refuse to litigate the avoidance action, the requirements for derivative standing cannot be met in this case. Even if the Court were to extend application of the derivative standing doctrine to this Chapter 13 case, the Debtor would not have standing to proceed.

The final avenue through which the Debtor might achieve standing in this case is if the trustee assigns her rights to pursue the action over to the Debtor. This is in essence what is being proposed by the language of the amended Chapter 13 plan. Authority exists for such action in this district. *See Hearn v. Bank of New York* (*In re Hearn*), 337 B.R. 603 (Bankr. E.D. Mich. 2006) (the confirmed Chapter 13 plan expressly provided that debtor would have standing to prosecute strong-arm claims and the lender was bound by the provisions of the plan, irrespective of whether debtor had standing to pursue the action otherwise); *but see In re Cohen*, 305 B.R. at 891 ("Although the debtors' chapter 13 plan provides that they will prosecute the avoiding action and use net litigation proceeds to help fund the plan, a plan term does not create standing if none otherwise exists."). Whether the parties agree to such action remains to be seen.

IV. Conclusion

For the reasons expressed in this opinion, the Court finds that the Debtor does not have an

-10-

independent or derivative right of standing to prosecute strong-arm claims under § 544. The Court grants the Defendants' motion to dismiss Debtor's adversarial complaint. The Court will enter an order consistent with this opinion.

**Signed on April 09, 2008**

                                                **/s/ Walter Shapero**
                                          **Walter Shapero**
                                          **United States Bankruptcy Judge**